IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHAUNA M. EKLUND,<br><br>    Plaintiff,<br><br> vs.<br><br>MICAHEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>    Defendant. | **MEMORANDUM DECISION & ORDER**<br><br>Case No: 2:08-CV-286 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

  Plaintiff Shauna M. Eklund filed suit seeking judicial review of the decision of the

Commissioner denying her application for Disability Insurance Benefits under Title II of the

Social Security Act.[1]  Plaintiff alleges that she is unable to work due to fibromyalgia and

depression.[2]  After a careful review of the entire record and the parties' submissions, the court

concludes that the decision of the Commissioner should be affirmed.

---

[1] 42 U.S.C. §§ 401-434.

[2] Tr. 57, 91.

## PROCEDURAL HISTORY

Eklund applied for benefits on June 2, 2005 ,[3] alleging that she became unable to work on March 31, 2004.[4] Eklund's application was denied initially,[5] and on reconsideration.[6] She then obtained a hearing before an Administrative Law Judge (ALJ) which was held June 12, 2007.[7] In a written decision, the ALJ determined that Eklund was not eligible for benefits because she was capable of performing her past relevant work.[8] The Appeals Council denied Eklund's request for review, making the ALJ's decision the final decision of the Commissioner.[9]

## SUMMARY OF EVIDENCE

### A. Evidence at the Administrative Hearing

#### 1. Eklund's Testimony

At the time of the hearing, Eklund was 55 years old.[10] She had a high school education and a degree in cosmetology. She had worked at American Express as a fraud analyst and at Discover Card as an account manager/collector.[11] Eklund's counsel submitted a written proffer

---

[3]Tr. 17, 57-66.

[4]Tr. 17, 64, 473.

[5]Tr. 47, 49-52.

[6]Tr. 48, 54-56.

[7]A transcript of the hearing may be found in the administrative record at pages 470-503.

[8]Tr. 28.

[9]Tr. 6-8.

[10]Tr. 473.

[11]Tr. 474.

of her testimony concerning her impairments and symptoms, and their effects on her functioning, the pertinent portions of which are discussed below.[12]

### 2. Testimony of the Medical Expert (ME)

Daniel Girzadas, M.D., testified as a medical expert.[13]  Dr. Girzadas testified that Eklund did not meet or equal a listing in the listing of impairments.[14]  Based on his review of the medical records, Dr. Girzadas found that Eklund had a residual functional capacity (RFC) to lift 10 pounds occasionally, and less than 10 pounds frequently; stand/walk for at least 2 hours in an 8-hour day; sit for 6 hours with a sit/stand option; use foot controls; occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; occasionally could do balancing, squatting, stooping, crouching, kneeling, and crawling; had no manipulative limitations; and should avoid unprotected heights, hazardous machinery, and commercial driving.[15]

### 3. Testimony of the Vocational Expert (VE)

The VE testified that Eklund had past relevant work as a collection clerk which was skilled, sedentary work, and as a disbursement clerk, which is sedentary, semiskilled work.[16]  The VE testified that based on the RFC provided by the ME, Eklund could perform either of her past relevant jobs.[17]

---

[12]Tr. 483-84.  See Claimant's Proffer of Evidence in Support of Testimony, tr. 138-39.

[13]Tr. 484.

[14]Tr. 488.

[15]Tr. 489.

[16]Tr. 493.

[17]Tr. 493.

Eklund's counsel then questioned the VE about the effect of additional limitations not found by the ME, including (1) depression which would cause the individual to be off-task 20 percent of the workday; (2) fatigue and pain which would require her to lie down for 30-minute periods for a total of 8 hours during the day, exclusive of time spent sleeping at night; or (3) impairments or treatment that would cause the individual to miss 4 days of work per month. The VE testified that each of these limitations would not only preclude her past relevant work, but would preclude all other work. In response to another hypothetical describing an individual who could sit for no more than 3 hours in an 8-hour workday, the VE stated that the individual would not be able to perform Eklund's past relevant work, but there would be other jobs available that the individual could perform.[18]

## DISCUSSION

### A.  Legal Standard

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[19]  The Act further provides that an individual shall be determined to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[18]Tr. 494-95.

[19]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[20]

A person seeking Social Security benefits bears the burden of proving that because of his disability, he is unable to perform his prior work activity.[21] Once the claimant establishes that he has such a disability, the burden shifts to the Commissioner to prove that the claimant retains the ability to do other work and that jobs which he can perform exist in the national economy.[22]

The Commissioner's decision must be supported by substantial evidence.[23] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[24] Evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.[25]

The Commissioner's findings of fact, if supported by substantial evidence, are conclusive upon judicial review.[26] In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its judgment for that of the agency.[27] However, the court should carefully

---

[20] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[21] *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

[22] *Saleem v. Chater*, 86 F.3d 176, 178 (10th Cir. 1996); *Miller*, 99 F.3d at 975.

[23] *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998); *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997).

[24] *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[25] *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992); *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991).

[26] 42 U.S.C. §§ 405(g), 1383(c)(3); Perales, 402 U.S. at 390.

[27] *Hinkle*, 132 F.3d at 1351; *Decker v. Chater*, 86 F.3d 953, 954 (10th Cir. 1996).

examine the record and review it in its entirety.[28]  Failure of the Commissioner to apply the

correct legal standard is grounds for reversal.[29]

The Commissioner has established the following five-step process for determining

whether a person is disabled:

(1)    A person who is working is not disabled.  20 C.F.R. § 416.920(b).

(2)    A person who does not have an impairment or combination of
       impairments severe enough to limit his ability to do basic work
       activities is not disabled.  20 C.F.R. § 416.920(c).

(3)    A person whose impairment meets or equals one of the
       impairments listed in the "Listing of Impairments," 20 C.F.R. §
       404, subpt. P, app. 1, is conclusively presumed to be disabled.  20
       C.F.R. § 416.920(d).

(4)    A person who is able to perform work he has done in the past is not
       disabled.  20 C.F.R. § 416.920(e).

(5)    A person whose impairment precludes performance of past work is
       disabled unless the Secretary demonstrates that the person can
       perform other work available in the national economy.  Factors to
       be considered are age, education, past work experience, and
       residual functional capacity.  20 C.F.R. § 416.920(f).[30]

**B.  The ALJ's Decision**

The ALJ performed the sequential analysis, finding as follows:  (1) Eklund has not

engaged in substantial gainful activity since March 31, 2004, the alleged onset date; (2) she has

severe impairments including fibromyalgia, mild carpal tunnel syndrome, degenerative disc

---

[28]*Musgrave*, 966 F.2d at 1374; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

[29]*Daniels*, 154 F.3d at 1132; *Hinkle*, 132 F.3d at 1351.

[30]*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

disease of the spine, pelvic outlet obstruction secondary to sigmoid volvulus status post sigmoid colectomy, idiopathic peripheral neuropathy, and depression; (3) she does not have an impairment or combination of impairments that meets or equals the listings;[31] and (4) she is capable of performing her past relevant work as a collection clerk and credit analyst/disbursement clerk.[32]  Based on these findings, the ALJ concluded that Eklund was not disabled as defined by the Social Security Act.[33]

Eklund raises three arguments in support of her disability claim:  (1) the ALJ erred in improperly rejecting the opinions of her doctors; (2) the ALJ erred in improperly rejecting her subjective complaints; and (3) the ALJ failed to conduct a proper step-four assessment.[34]

## C. Medical Opinions

"The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record."[35]  "An ALJ may disregard a treating physician's opinion, however, if it is not so supported."[36]  In all cases, the

---

[31]Tr. 19.

[32]Tr. 28.

[33]Tr. 28.

[34]Plaintiff's Memorandum in Support of Reversal or Remand of Commissioner's Administrative Decision ("Opening Brief") at 9, docket no. 11, filed September 5, 2008.

[35]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

[36]*Doyal*, 331 F.3d at 762 (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994)).

regulations require that the ALJ "give good reasons" in his decision for the weight that he gave to the treating physician's opinion.[37]

Eklund contends that the ALJ improperly rejected the opinion of her treating physician, Dana A. Andersen, M.D., and improperly evaluated her fibromyalgia.[38]  On May 24, 2004, Dr. Andersen noted that Eklund continued to struggle with significant daily pain and depression.  Her medication was holding her stable and she was "somewhat" functioning, but was not able to return to work.  She had "tender points described for fibromyalgia, chronic fatigue and no motivation."[39]  Dr. Andersen filled out paperwork putting Eklund on disability until August 1, 2004.[40]  On June 14, 2005, Dr. Andersen filled out paperwork "for permanent disability secondary to fibromyalgia chronic in nature and treated for five years."[41]  On January 24, 2006, Dr. Andersen filled out a Medical Source Statement in which she opined that Eklund would have to lie down for 8 hours during the day in 30-minute episodes; that she had a pain-producing condition, fibromyalgia, that would be severe enough to interfere with attention and concentration constantly; she could sit for 30 minutes at a time for a total of 3 hours in an 8-hour workday; stand and walk for 30 minutes at a time for a total of 3 hours in an 8-hour work-day; she could lift 5 pounds occasionally, but could never lift weight more than 5 pounds; and would

---

[37]*Doyal*, 331 F.3d at 762; *Hamlin*, 365 F.3d at 1215.

[38]Opening Brief at 12.

[39]Tr. 214.

[40]Tr. 214.

[41]Tr. 204.

need to miss work due to her impairments or treatment more than 4 days per month.[42]  As

discussed above, the VE testified that such limitations would preclude all work.[43]

In his decision, the ALJ stated that he accepted Dr. Andersen's opinions with regard to

medical issues relating to the nature and severity of Eklund's impairments.  He noted, however,

that RFC, the ability to do past work, and to do other work, are issues reserved to the

Commissioner.  The ALJ stated that Dr. Andersen's statements had been carefully considered,

but were given "diminished weight as they indicate very extreme limitations that are unsupported

by the objective evidence, inconsistent with claimant's testimony at the hearing and inconsistent

with the claimant's activities of daily living as demonstrated in the record."[44]  The ALJ

acknowledged that "[t]reatment notes and other examinations show a degree of limitation but not

to the point suggested by Dr. Anders[e]n."[45]  For example, Dr. Andersen's notes, as well as those

of other treating physicians, reflect "within normal limit evaluations" throughout the time period

he treated her.[46]

The ALJ stated that "there is very little objective basis to support claimant's alleged

chronic functional limitations due to her physical and mental impairments."[47]  While Eklund has

a long history of treatment for the symptoms of fibromylagia, "objective findings were basically

---

[42]Tr. 401-03.

[43]Tr. 494-95.

[44]Tr. 27.

[45]Tr. 27.

[46]Tr. 27.

[47]Tr. 21.

mild or within normal limits, with rheumatological findings of a negative ANA, sed rate, rheumatoid factor and collegian vascular markers."[48]

The ALJ stated that this "distinct theme of normal objective findings" continued throughout the time period at issue."[49]  The ALJ then thoroughly reviewed and summarized the medical records noting numerous instances in which various examinations and tests were performed, but the tests were negative or there were no substantive findings that would explain Eklund's symptoms.

For example, on November 19, 2004, Eklund saw Scott Johnson, D.O., for neck, back, and hip pain which had been present for the last 20 years.  She reported relatively new pain referring down her right arm with numbness and tingling in all 5 digits of the right hand.  She also had low back pain with numbness and tingling in the toes.  She reported no weakness in the upper or lower limbs, and no bowel or bladder dysfunction.  She stated that she walked 1½ miles twice a day.  On examination, she had full cervical and lumbar range of motion; upper and lower extremity strength was 5/5; deep tendon reflexes were +2, except +1 at the Achilles.  Pinprick sensation was slightly diminished over the dorsal aspect of both feet, but she had normal pinprick sensation in her upper limbs.  Spurling, slump, and straight leg raise tests were all negative.  Palpation over the upper trapezius, rhomboids, and gluteus medius muscles increased her pain; but she had no pain with palpation over the supraspinous ligaments of the thoracic and lumbar spine; no pain over the medial fat pads of the knees, medial malleoli, and epicondyle of the

---

[48]Tr. 21-22.  See Dr. Andersen's treatment note of 2/3/04 noting negative test results, tr. 217, 330.

[49]Tr. 22.

elbows; internal and external rotation of the hip did not increase her pain. Dr. Johnson diagnosed chronic musculoskeletal pain, possible fibromyalgia, and upper and lower limb numbness. He noted that her right upper extremity and lower limb numbness could not be explained by fibromyalgia, and ordered an MRI of the cervical and lumbar spine to see if disk or other degenerative changes could be causing her leg or hand symptoms.[50]

The MRI of the lumbar spine showed mild degenerative disk disease at L3-4 and L5-S1 and small thoracolumbar Schmorl nodes. L4-5 was normal. The MRI of the cervical spine showed degenerative changes at C3-4, C4-5, and C5-6 levels. There was no significant central canal stenosis, and only slight narrowing of the neural foramen at C4-5 and C5-6. On December 6, 2004, Dr. Johnson reported Phalen, Tinel (at wrist and elbow), Adson, Allen, and East tests were all negative.[51]

The ALJ went on to cite many other similar examples in the medical records.[52]

Eklund argues that the ALJ's approach demonstrates a lack of understanding of the nature of fibromyalgia and the way it is supposed to be evaluated in a social security case.[53]

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue."[54] It is a chronic condition

[50]Tr. 22. See Dr. Johnson's treatment notes, tr. 178-79.

[51]Tr. 22. See Dr. Johnson's treatment notes, tr. 172; MRI results, tr. 176.

[52]Tr. 22-23.

[53]Opening Brief at 14.

[54]Opening Brief at 14 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).

"causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue."[55]  "Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective."[56]  Because there are no confirming diagnostic tests for this condition, it is usually diagnosed by eliminating other conditions.  According to the standards of the American College of Rheumatology, "fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites know as trigger points"[57] which "when pressed firmly cause the patient to flinch."[58]

Eklund states that although the ALJ admitted that she has fibromyalgia, he rejected the assessments of her treating physician because of a lack of objective findings.  Eklund contends this was error since no laboratory tests exist to confirm the diagnosis.[59]  Nevertheless, as the Commissioner points out, simply showing that a claimant has been diagnosed with fibromyalgia is not enough to establish disability since "fibromyalgia is not always (indeed, not usually) disabling."[60]  Thus, the fact that Eklund has been diagnosed with fibromyalgia does not mean that she automatically qualifies for social security benefits.

---

[55]*Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003).

[56]*Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

[57]*Brosnahan*, 336 F.3d at 672 n.1.

[58]*Sarchet*, 78 F.3d at 306.

[59]Opening Brief at 14.

[60]Motion to Affirm the Commissioner's Decision ("Commissioner's Brief") at 10, docket no. 13, filed October 6, 2008 (quoting *Estok v. Apfel*, 152 F.3d 636,640 (7th Cir. 1998); *see Sarchet*, 78 F.3d at 307.

Because the ultimate determination of disability and RFC are issues reserved to the Commissioner, a treating physician's opinion on these issues is not dispositive.[61]  In this case, the ALJ gave specific, legitimate reasons for the weight he accorded Dr. Andersen's opinion.

As the Commissioner points out, Dr. Andersen's opinion was inconsistent with that of the ME who, after a review of Eklund's medical records, testified that she would be capable of performing sedentary work.[62]  Similarly, Dr. Andersen's opinion is also inconsistent with the opinion of a DDS reviewing physician Max Miller, M.D., who concluded that Eklund was capable of performing light work.[63]  A non-examining physicians' opinion is an acceptable medical source which the ALJ is entitled to consider.[64]

The Commissioner argues that Dr. Andersen's opinion is inconsistent with the benign findings that he and other physicians recorded.[65]  For example, Dr. Andersen found that Eklund had normal strength, gait, and sensation, and no neurological deficits.[66]  A stress test ordered by Dr. Andersen showed good exercise tolerance.[67]  In addition to the findings of Dr. Johnson discussed above, Tim Grange, M.D., found that Eklund had adequate strength in the upper

---

[61] *White v. Barnett*, 287 F.3d 903, 907 (10th Cir. 2001); *Castellano v. Secretary of HHS*, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. § 404.1527(e).

[62] Tr. 489.

[63] Tr. 155-63.

[64] *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (citing 20 C.F.R. § 404.1513(a)(1).

[65] Commissioner's Brief at 12.

[66] Tr. 216, 304, 459.

[67] Tr. 210, 255.

extremities, intact sensation, and full range of motion of the cervical spine.[68] Scott Adelman,

M.D., found that she had "excellent cervical and lumbar ROM with no deficiencies,"[69] and EMG

studies showed "very minimal" median neuropathy.[70] As the Commissioner argues, these

findings are inconsistent with Dr. Andersen's very limited medical source statement in which she

opined that Eklund could lift only 5 pounds, could sit for only 3 hours in an 8-hour workday,

would have to lie down for 8 hours during the day, and would need to miss four days of work per

month.

Eklund argues that the lack of objective findings was an improper basis for discounting

Dr. Andersen's opinion because a diagnosis of fibromyalgia does not require objective findings

other than the requisite positive tender points.[71] In her reply, she also asserts that the "benign

examination findings" cited by the Commissioner are irrelevant because they have nothing to do

with fibromyalgia or the treating physician's assessment. She asserts that because fibromyalgia

"is not a neurological disease, does not cause central canal stenosis, does not limit range of

motion of the spine, or cause median neuropathy," these findings do not undermine the

fibromyalgia diagnosis or the associated limitations.[72] However, as discussed above, a diagnosis

of fibromyalgia does not automatically mean that the claimant is disabled. The reports cited by

[68]Tr. 235.

[69]Tr. 278.

[70]Tr. 284.

[71]Opening Brief at 16.

[72]Reply Brief ("Reply") at 2-3, docket no. 16, filed November 24, 2008. The court notes that the Reply greatly exceeds the page limit specified in the court's scheduling order. (See Case Management Order at 2, docket no. 8, filed June 26, 2008.) The court nevertheless has read and considered the entire Reply.

the Commissioner do provide evidence that supports the ALJ's conclusions that Eklund's limitations were not as severe as Dr. Andersen opined. Thus, the ALJ's reliance on conflicting evidence in the medical record to give diminished weight to Dr. Andersen's opinion was proper.[73]

Eklund also objects to the ALJ's statement that Dr. Grange "evaluated the claimant and described no substantive findings."[74] She points out that Dr. Grange noted that she was tender to palpation in certain areas, had increased pain with flexion and adduction of the thumb, and that Phalen's was positive on the right, and Tinel's was positive at the elbow and wrist.[75] Eklund argues that these findings stand in stark contrast to the ALJ's statement and undermine the Commissioner's assertion that Dr. Andersen's opinion is not supported by objective evidence.[76] However, Dr. Grange also found that Eklund's movements were fluid, she had full range of motion of the cervical spine, adequate strength in both upper extremities, intact sensation, and was seated comfortably in no acute distress.[77] While the ALJ's characterization of Dr. Grange's report may not be entirely accurate, the report does support the ALJ's finding that the limitations found by Dr. Andersen were inconsistent with the other medical records.

Eklund also argues that the ALJ's statement that Dr. Andersen's opinion was inconsistent with Eklund's testimony and her activities of daily living is entirely without support.[78] The issues

---

[73] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

[74] Reply at 4 (citing the ALJ's decision, tr. 22).

[75] Reply a 4; see Dr. Grange's report, tr. 235.

[76] Reply at 4.

[77] Tr. 235.

[78] Opening Brief at 13; Reply at 4-6.

regarding Eklund's testimony and activities of daily living are discussed below in the section on credibility.

Eklund also takes issue with the ALJ's statement that the limitations found by Dr. Andersen were "extreme."[79] She compares Dr. Andersen's limitations with the ALJ's own RFC assessment to support her argument that Dr. Andersen's limitations were not "extreme." However, this argument is simply an invitation to reweigh the evidence which the court may not do.[80]

The ALJ need only explain the weight he is giving a medical opinion and the reasons for that weight.[81] The ALJ did this. This court reviews only "the *sufficiency* of the evidence, not its weight."[82] The court concludes that there was substantial evidence to support the ALJ's findings."

**D. Credibility Determination**

The ALJ found Eklund's testimony concerning her symptoms was not credible.[83] Eklund argues that the ALJ improperly rejected her subjective complaints.[84]

---

[79]Opening Brief at 16-18; Reply at 10-11.

[80]*Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

[81]*Oldham*, 509 F.3d at 1258.

[82]*Oldham*,509 F.3d at 1257.

[83]Tr. 24-26.

[84]Opening Brief at 19-23; Reply at 12-15.

As the Tenth Circuit has observed, the evaluation of a claimant's subjective allegations of pain and other symptoms "ultimately and necessarily turns on credibility."[85]  Generally, credibility determinations are the province of the ALJ and should not be disturbed if supported by substantial evidence.[86]  Nevertheless, the ALJ's findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[87]  In *Kepler v. Chater*, the Tenth Circuit held that the ALJ must give specific reasons for rejecting a claimant's subjective allegations of pain and other symptoms.[88]  However, so long as the ALJ sets forth the specific evidence he relies on in assessing credibility, the requirements of *Kepler* are satisfied.[89]

In evaluating a claimant's subjective allegations of pain and other symptoms, the ALJ must determine (1) whether the claimant has established by objective medical evidence that he has a pain- or symptom-producing impairment; (2) whether there is a "loose nexus" between the impairment and the claimant's subjective allegations; and (3) if so, whether considering all of the evidence, both objective and subjective, the claimant's alleged symptoms are in fact disabling.[90]

In this case, the ALJ followed the proper analysis, but found that Eklund's testimony was not credible.[91]  In support of his credibility determination, the ALJ stated that Eklund's

---

[85]*White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

[86]*McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002); *White*, 287 F.3d at 909.

[87]*McGoffin*, 288 F.3d at 1254 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

[88]68 F.3d 387, 391 (10th Cir. 1995).

[89]*White*, 287 F.3d at 909.

[90]*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

[91]Tr. 24-26.

description of her activities of daily living was indicative of an individual that was capable of performing sedentary work. For example, she was able to care for her personal needs, do light household chores, prepare simple meals, watch television, read, drive a car, walk, and shop. The ALJ further noted that although Eklund indicated she uses a wheelchair, nothing in the record indicated that this was a required assistive device. Further, she apparently was able to perform her activities of daily living without a wheelchair.[92] The ALJ also noted that Eklund had been noncompliant on numerous occasions in attending recommended physical therapy and taking her prescribed medications.[93]

In response, Eklund states that the ALJ's assertion that she can take care of her own personal needs is only partially true. She notes that at times, she needs help getting in and out of the bathtub, getting dressed, and has trouble fixing her hair because of pain caused by raising her arms.[94] She further asserts that the ability to read, watch TV, prepare simple meals, do light housekeeping, drive, and grocery shop are not inconsistent with a finding of disability. She states that the limited activities cited by the ALJ fall far short of undermining her credibility.[95]

---

[92] Tr. 24-25. See Eklund's Function Report–Adult, tr. 120-26;Claimant's Proffer of Evidence in Support of Testimony, tr. 138-39.

[93] Tr. 25. The ALJ cited several examples of noncompliance: Eklund stopped her medications (tr. 208, 314); Eklund returned to physical therapy after 6 mos. absence (tr. 277); Eklund had gone off her methadone for a second time and stated that she had some "side effects" (tr. 278).

[94] Opening Brief at 20 (citing Disability Report–Appeal, tr. 132); Reply at 5-6.

[95] Opening Brief at 20; Reply at 5-6.

As Eklund argues, the ALJ may not rely on minimal daily activities as substantial evidence that the claimant does not suffer disabling symptoms.[96]  However, the ALJ's finding in this case that Eklund's daily activities were consistent with sedentary work is supported by substantial evidence.

Eklund also argues that the ALJ's reliance on her noncompliance with recommended treatment was legally erroneous because the ALJ failed to follow the Tenth Circuit's four-part non-compliance analysis.[97]  However, this four-part standard, first announced in *Frey v. Bowen*,[98] applies to circumstances in which the ALJ denies a disability claim based on the claimant's refusal to follow prescribed treatment.  In this case, the ALJ did not base his decision on Eklund's failure to comply with treatment.  Rather, in evaluating the veracity of Eklund's allegations of disabling symptoms, the ALJ properly considered her efforts to relieve her symptoms including seeking and following recommended treatment.[99]  The ALJ stated that "if the claimant were truly experiencing disabling symptoms, then it would be reasonable to expect that she would comply with the forms of treatment offered."[100]  Thus, the ALJ properly based his credibility determination in part on Eklund's noncompliance with treatment.

In his credibility determination, the ALJ made the following statement:  "[M]edical evidence repeatedly shows within-normal-limit evaluations and does not contain any opinions

---

[96]*Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

[97]Opening Brief at 21; Reply at 12-14.

[98]816 F.2d 508, 517 (10th Cir. 1987).

[99]*See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)(rejecting a similar argument).

[100]Tr. 25.

from <u>acceptable</u> treating or examining physicians indicating the claimant is disabled or cannot perform any work."[101]  Eklund contends that this is assertion is clearly erroneous given the opinions of Dr. Andersen.[102]

The ALJ's statement is unclear, but since he underlined the word "acceptable," he likely meant that there were no such opinions that he was accepting at face value.  In any event, it is clear from the ALJ's decision that he was fully aware of Dr. Andersen's opinion, but gave it only diminished weight.

As discussed, the ALJ's credibility determination is entitled to great deference, and should not be disturbed where, as here, it is supported by substantial evidence.[103]  In this case, the ALJ provided ample, specific reasons for his credibility determination.

**E. RFC Determination**

Eklund contends that the ALJ failed to conduct an adequate assessment at step four of the evaluation.  She asserts that because the ALJ rejected the assessments of her treating physician and her own subjective complaints, the ALJ's RFC assessment did not contain a complete description of her limitations.  For example, she notes that at step two, the ALJ found that she had severe depression.  She notes that an impairment is "severe" at step two, if it significantly limits basic work activities.[104]  Eklund argues that since the ALJ therefore must have found that her depression caused work-related limitations, he should have included those limitations in his

---

[101]Tr. 25 (emphasis in original).

[102]Opening Brief at 22-23; Reply at 1-2, 14-15.

[103]*Kepler*, 68 F.3d at 391.

[104]Opening Brief at 23 (citing 20 C.F.R. § 404.1520(c)).

RFC assessment.  Eklund asserts that it is particularly troubling that the RFC contains no mental

limitations at all in light of the ALJ's finding that she can return to skilled or semiskilled work

which would require a rather high degree of concentration and mental functioning.  She states

that if the RFC had included all of her limitations, a finding of disabled would have been

required.[105]

The ALJ discussed Eklund's mental impairments in his decision.  He noted that there was

no suggestion of disabling mental problems, and that the medical evidence suggested that

Eklund's psychiatric problems were generally managed by medications.  She had not required

any extended periods of hospitalization for her impairments, and had not participated in

psychotherapy during the relevant time period.[106]  The ALJ's determination is supported by a

DDS Case Summary in which the reviewer found that Eklund's psychological problems were

non-severe.[107]  Similarly, a state agency psychiatrist who filled out a Psychiatric Review

Technique, found no limitations in activities of daily living, no limitations in maintaining social

functioning, no episodes of decompensation, and only mild limitations in maintaining

concentration, persistence, or pace.[108]

Eklund also argues that the RFC assessment should have included the limitations found

by Dr. Andersen, such as the ability to sit for only three hours in an 8-hour day, her need to lie

down during the day, and her need to miss at least four days of work per month.  These

---

[105]Opening Brief at 23-24 (citing the VE's testimony, tr. 494); Reply at 11-12.

[106]Tr. 25.

[107]Tr. 274.

[108]Tr. 150.

contentions have been addressed above. Since the ALJ did not accept these limitations, he was

not obligated to include them in the RFC or in his hypothetical to the VE.[109]

## ORDER

The Commissioner applied the correct legal standard, and his decision is supported by

substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED**.


September 29, 2010.

BY THE COURT:

_____
Ted Stewart
U.S. District Judge

---

[109] *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).